**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

JAMES JOHNSON and : 
VIKKI FORD, : 
 : 
    Plaintiffs, : 
 :   CIVIL ACTION NO.
    v. :   2:13-CV-00283-RWS
 : 
PICKENS COUNTY, GEORGIA, : 
 : 
    Defendant. : 

## ORDER

This case comes before the Court on Defendant Pickens County,

Georgia's Second 12(b)(6) Motion to Dismiss [9].  After reviewing the record,

the Court enters the following Order.

## Background

This case arises out of Plaintiffs' termination following their comments

made to the *Pickens Progress* newspaper regarding county funding for legal

defense for indigent persons.  From January 2009 until their termination in

August 2013, Plaintiffs James Johnson and Vikki Ford worked for Pickens

County (the "County") as attorneys providing legal defense for indigent persons

in proceedings before the Pickens County Juvenile Court.  (Am. Compl., Dkt. [7] at 2-4.)

On or about January 7, 2009, Plaintiffs entered into written contracts with the County to provide legal representation to indigent parents and children in proceedings before the Pickens County Juvenile Court.  (Id. at 4.)  The contracts provided that Johnson would be paid $45,000 per year; Ford would be paid $40,000.  (Id.)  Both contracts provided that waiver or modification of the contracts' terms must be made in writing and signed.  (Id. at 4-5.)  In 2009 and 2010, the County paid the Plaintiffs the amounts set forth in the contracts.  (Id. at 5.)   In 2011, the County paid Plaintiffs $30,000 each; in 2012, the County paid Plaintiffs $20,000 each; and in 2013, the County paid  Plaintiffs a pro-rated monthly amount that would have been equal to $20,000 annually until Plaintiffs' contracts were terminated on or about August 23, 2013.  (Id. at 5.)

The events preceding Plaintiffs' termination took place between October 2012 and August 2013.  (Id. at 2-4.)  In mid-October 2012, Plaintiffs and another attorney, Karen Voyles, (collectively, the "Attorneys") were interviewed for an article in the *Pickens Progress* local newspaper regarding the effects of budget cuts on county services.  (Id. at 5; see also Ex. A to Defs.'

2

First Mot. to Dismiss, Dkt. [6-1].)  In the article, the Attorneys are reported as saying that "cuts to their funding have been so severe they are no longer able to adequately defend clients that are facing having their children taken from them."  ([6-1] at 1.)   The article reports the drop in the Attorneys' pay from $40,000 to $20,000.  (Id. at 2.)  The article also discusses the Attorneys' objections to being required to ask a judge for extra funding for special expenses, such as mental health evaluations or translation services.  (Id.) Additionally, the article reports that the Attorneys "considered a mass resignation to protest the cuts, but didn't out of concern for what would happen to the clients."  (Id.)  The article further states that the Attorneys "expressed concern that they may not be given another contract because they have spoken out here publicly, but all three expressed sentiments that something has to change."  (Id.)   The *Pickens Progress* interviewed Judge John Worcester, Pickens County Juvenile Court judge, by email for the same article.  (See id.)

On or about October 25, 2012, Plaintiffs received a letter from Judge Worcester notifying Plaintiffs that their contracts would be terminated as of December 31, 2012.  (Am. Compl., Dkt. [7] at 7; Ex. 1 to Am. Compl., Dkt. [7-1].)  The letter was also sent to Ms. Voyles and Jennifer Galligan.  (Id.)  On or

AO 72A
(Rev.8/82)

about October 29, 2012, Plaintiff Johnson wrote to the Pickens County

Commissioner, Robert Jones, on behalf of himself, Plaintiff Ford, and Ms.

Voyles, informing Commissioner Jones of Judge Worcester's letter and seeking

clarification of whether the Commissioner, as a party to the contract, in fact

intended to terminate the contracts.  (Am. Compl., Dkt. [7] at 7; Ex. 2 to Am.

Compl., Dkt. [7-2].)  Also on October 29, 2012, Judge Worcester sent a letter

inviting a group of Pickens County indigent defense attorneys to notify him

whether they wanted to be considered for contracts for 2013.  (Am. Compl.,

Dkt. [7] at 8; Ex. 3 to Am. Compl., Dkt. [7-3].)  That letter was not sent to

Plaintiffs, but was sent to Ms. Voyles and Ms. Galligan.  (Id.)

On October 31, 2012, Commissioner Jones responded to Plaintiffs' letter,

confirming that Judge Worcester's letter had terminated the contracts.  (Am.

Compl., Dkt. [7] at 8; Ex. 4 to Am. Compl., Dkt. [7-4].)  Despite the purported

termination of Plaintiffs' contracts, the County later deemed the termination

"ineffective" (Am. Compl., Dkt. [7] ¶ 29), and Plaintiffs continued to perform

services under the contracts until "the County provided contractually proper

notice to Plaintiffs" on June 21, 2013.  (Id. at 9.)  Plaintiffs stopped performing

and the County stopped paying under the contracts in August 2013.  (Id.)  After

4

the contracts were terminated, Plaintiff Johnson "inquired into" a newly-created position with the Pickens County public defender.  (<u>Id.</u> at 2, ¶ 34.)   Plaintiff Johnson alleges that he was never considered or interviewed for the position. (<u>Id.</u> at ¶ 42.)  The County hired another lawyer who is not a party to this case. (<u>Id.</u>)

Plaintiffs filed suit against the County on December 24, 2013.  (Compl., Dkt. [1].)  Defendants filed their first Motion to Dismiss for Failure to State a Claim on January 21, 2014.  (Dkt. [6].)  Plaintiffs amended their complaint on February 6, 2014.  (Am. Compl., Dkt. [7].)  Plaintiffs raise claims related to First Amendment retaliation (Count I) as well as breach of contract claims (Count II).  (<u>Id.</u> at 10-13.)   Defendants filed the instant Second 12(b)(6) Motion to Dismiss and Brief in Support [9] ("Def.'s Mot. to Dismiss") on February 24, 2014.

<b>Discussion</b>

## I.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual

5

allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  <u>Id.</u>

At the motion to dismiss stage, "all-well pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing <u>Iqbal</u>, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

6

"The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." D.L. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); see also Fed. R. Civ. P. 12(d).  However, documents attached to a complaint are considered part of the complaint.  Fed. R. Civ. P. 10(c).  Documents "need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document," provided it is central to the plaintiff's claim.  D.L. Day, 400 F.3d at 1276.  At the motion to dismiss phase, the Court may also consider "a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed."  Id. (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).  "'Undisputed' means that the authenticity of the document is not challenged."  Id.

In this case, as stated in the Background section, supra, Plaintiffs bring claims against Defendant Pickens County under federal law arising out of Plaintiffs' termination and under state law for breach of contract.  Using the framework articulated above, the Court considers Defendant's Motion to

7

Dismiss, first as to Plaintiffs' federal law claims and then as to their supplemental claims arising under Georgia state law.

## II.   Analysis

### A.   First Amendment Retaliation Claims

In Count I of the Amended Complaint, Plaintiffs raise claims against the County pursuant to 42 U.S.C. § 1983 for terminating Plaintiffs' employment contracts in violation of Plaintiffs' First Amendment rights.  Plaintiffs claim that the constitutional violation occurred when "the County terminated Plaintiffs' contracts in retaliation for their speaking to the local newspaper regarding the dilatory effects of the County's budget cuts on public defender services, a matter of public concern."  (Am. Compl., Dkt. [7] ¶ 11.)  The Court reads Plaintiffs' Amended Complaint to allege three possible retaliatory acts: (1) Judge Worcester's October 25, 2012 letter purporting to terminate Plaintiffs' contracts and Commissioner Jones's October 31, 2012 letter confirming termination; (2) the notice received by Plaintiffs on June 25, 2013 of the contracts' termination and the subsequent termination on August 21, 2013; (3) the failure to consider or interview Plaintiff Johnson for the newly-created position with the Pickens County public defender.

Defendant moves to dismiss these claims on grounds that it cannot be held municipally liable for the allegedly retaliatory acts.  (Def.'s Mot. to Dismiss, Dkt. [9] at 24-25).   To state a claim for retaliation in violation of the First Amendment, Plaintiffs, as government contractors, must show that their speech was constitutionally protected and that the speech was a substantial or motivating factor in Defendant's decision to terminate their contracts.  Bd. of Cnty. Comm'rs v. Umbehr, 518 U.S. 668, 675 (1996).  Whether Plaintiffs can make a showing of a First Amendment retaliation claim is governed by the four-part Pickering[1] analysis.  Walden v. Ctrs. for Disease Control & Prevention, 669 F.3d 1277, 1285-86 (11th Cir. 2012) (citing Shahar v. Bowers, 114 F.3d 1097, 1102-03 (11th Cir. 1997)).   Plaintiffs have named Pickens County as the sole Defendant in this case.  The Court thus first considers the standard for county liability under Section 1983 and whether Defendant may be

---

[1] Pickering v. Bd. of Educ., 391 U.S. 563 (1968).  Under the Pickering analysis, the Court must find that (1) Plaintiffs' speech involved a matter of public concern; (2) Plaintiffs' interest in speaking outweighed the government's legitimate interest in efficient public service; and (3) the speech played a substantial part in the government's challenged employment decision.  Cook v. Gwinnett Cnty. Sch. Dist., 414 F.3d 1313, 1318 (11th Cir. 2005) (citing Bryson v. Waycross, 888 F.2d 1562, 1565-66 (11th Cir. 1989)).  If the employee can make the above showing, the burden shifts to the government to show that (4) it would have made the same employment decision even in the absence of the protected speech.  Id.  The first two prongs of this test are questions of law while the latter two are questions of fact.  Id.

9

held liable for the alleged retaliatory acts challenged in this case, analyzing each

act in turn.

Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

"In order to prevail in a civil rights action under Section 1983, 'a plaintiff must

make a prima facie showing of two elements: (1) that the act or omission

deprived plaintiff of a right, privilege or immunity secured by the Constitution

or laws of the United States, and (2) that the act or omission was done by a

person acting under color of law.'"  Marshall Cnty. Bd. of Educ. v. Marshall

Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc.

v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)).  Local

government units such as counties constitute "persons" subject to suit under

Section 1983.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  At

the same time, however, the Supreme Court "has placed strict limitations on

10

municipal liability under [Section] 1983." <u>Grech v. Clayton Cnty., Ga.</u>, 335 F.3d 1326, 1329 (11th Cir. 2003).

In <u>Monell</u>, the Supreme Court held that "a municipality cannot be held liable under [Section] 1983 on a <u>respondeat superior</u> theory." 436 U.S. at 691. On the contrary, the Court held that local governing bodies, such as counties, can be sued under Section 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Id.</u> at 690. In other words, to hold a county liable under Section 1983, a plaintiff must show that a county employee or policymaker committed the constitutional violation, and did so pursuant to an official county policy or custom. <u>Id.</u> at 694; <u>Grech</u>, 335 F.3d at 1329. This requirement of a policy or custom "is intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action *for which the municipality is actually responsible*." <u>Grech</u>, 335 F.3d at 1329 n.5 (emphasis in original) (citing cases).

In accordance with the foregoing, Pickens County can be held liable under Section 1983 for the alleged retaliatory acts only if the actors, first, acted

11

on behalf of the county, and second, acted pursuant to an official policy or custom of the county.  Defendants contend that Plaintiffs have failed to allege the existence of an official government policy or custom that would render Pickens County liable under Section 1983.  Plaintiffs, on the other hand, argue that they "have clearly pled that they were terminated by official act of the County as retaliation for their protected speech."  (Pls.' Br. in Opp'n to Defs.' Second Mot. to Dismiss ("Pls.' Opp'n Br."), Dkt. [12] at 22 (citing Am. Compl., Dkt. [7] ¶¶ 24-29, 32-37, 40-44).)  Put differently, it is Plaintiffs' position that the decisions to terminate Plaintiffs' contracts and to not consider Johnson for the public defender position were made in retaliation for Plaintiffs' comments to the newspaper, and that these decisions were made by County officials with final policy-making authority.  The Court thus considers each alleged retaliatory act in turn.

> 1. *Judge Worcester's Letter of October 25, 2012 and Commissioner Jones's Letter of October 31, 2012*

If, as Defendant contends, Judge Worcester had no policymaking authority on behalf of Pickens County, there would be no basis under Section 1983 on which to hold the County liable for his conduct.  In this event,

12

Plaintiffs' federal law claims arising from the October 2012 "ineffective" termination letters would have to be dismissed.  Plaintiffs have not identified an official written policy of the County that would provide the basis for this cause of action.  Cf. Monell, 436 U.S. at 694.   Rather, Plaintiffs point to Judge Worcester's letter purporting to terminate Plaintiffs' contracts and, in addition and in the alternative, Commissioner Jones's letter confirming termination as evidence of municipal policy.

Under appropriate circumstances, a single decision by an official policymaker can establish the existence of an unconstitutional municipal policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); accord Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997); Martinez v. City of Opa-Locka, Fla., 971 F.2d 708, 713 (11th Cir. 1992).  As the Supreme Court has explained: "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." Scala, 116 F.3d at 1399 (quoting Pembaur 475 U.S. at 481).

But "only those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability."

Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (plurality opinion) (internal quotation omitted)).  "Municipal liability may arise with regards to an employment decision, . . . provided that the decisionmaker 'possesses final authority to establish municipal policy with respect to the action ordered.' " Quinn v. Monroe County, 330 F.3d 1320, 1326 (11th Cir. 2003) (quoting Pembaur, 475 U.S. at 481).

Additionally, the Eleventh Circuit has held that a municipality may be held liable under § 1983 under a ratification theory.  "County liability on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority."  Matthews v. Columbia Cty., 294 F.3d 1294, 1297 (11th Cir. 2002).  As the Eleventh Circuit has repeatedly made clear, however,

> [t]he final policymaker . . . must ratify not only the decision itself, but also the unconstitutional basis for it. Gattis v. Brice, 136 F.3d 724, 727 (11th Cir.1998) ("A policymaker's approval of an unconstitutional action can constitute unconstitutional county policy only when the policymaker 'approve[s] a subordinate's decision

14

> and the basis for it.' ") (emphasis in original) (quoting
> Praprotnik, 108 S. Ct. at 926).

Id. at 1297-98; see also Campbell v. Rainbow City, 434 F.3d 1306, 1313 (11th

Cir. 2006) ("[I]n order for a municipality to be liable under a ratification theory,

the final policymaker must ratify not only the decision of its member with an

unconstitutional motive, but also the unconstitutional basis itself.").

    To show an official municipal policy, Plaintiffs allege that the County

delegated to Judge Worcester "final policy-making authority with regard to

terminating these contracts." (Pls.' Opp'n Br., Dkt. [12] at 23.)  Plaintiffs point

to Judge Worcester's October 25, 2012 letter terminating their contracts as well

as Commissioner Jones's October 31, 2012 letter confirming that termination as

evidence that "Judge Worcester exercised a degree of control over the Juvenile

Court's indigent defense program, and that Commissioner Jones clearly

deferred to, endorsed, and/or agreed with Judge Worcester's decision with

regard to the contract termination." (Am. Compl., Dkt. [7] ¶¶ 25-29.)

    In response to Plaintiffs' argument, Defendant claims that Plaintiffs ask

the Court to make a "leap to the legal conclusion as to who it is that had final

policy-making authority," contrary to the pleading standards set forth in

Twombly and Iqbal.  (Defs.' Mot. to Dismiss, Dkt. [9] at 24).  But the standard

under which the Court must consider a motion to dismiss requires the Court to

construe all reasonable inferences "in the light most favorable to the *plaintiff*."

Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006) (quoting

Bryant, 187 F.3d at 1273 n.1) (emphasis added).

    Here, Defendant suggests that Judge Worcester's October 25, 2012 letter

and Commissioner Jones's October 29, 2012 letter are insufficient to show that

"Commissioner Jones somehow formally deferred all matters pertaining to

hiring, firing, contracting, and funding on to the Juvenile Court Judge."  (Def.'s

Mot. to Dismiss, Dkt. [9] at 24.)  Taking Plaintiffs' allegations as true, and

construing all inferences in their favor, at this stage the Court finds the

foregoing allegations sufficient to establish a decision of a County policymaker

that is actionable under § 1983.  Plaintiffs' allegations are sufficient to establish

that, in October 2012, Pickens County either invested Judge Worcester with

final policy-making authority as to contract termination, or that Commissioner

Jones subsequently ratified Judge Worcester's decision.  Accordingly,

Defendant's Motion to Dismiss cannot be granted on the grounds that Judge

Worcester's October 25, 2012 letter purporting to terminate Plaintiffs' contracts was not an act of the municipality.

The Court must next consider whether the alleged retaliatory act in October 2012 resulted in a constitutional deprivation such that the County should be liable under Section 1983.  The Court finds that it did not. Although the parties have not directly raised the issue, there is a substantial question as to Plaintiffs' standing to bring claims based on the "ineffective" termination letter in October 2012.  Article III of the Constitution confines the reach of federal jurisdiction to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  This limitation "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded."  Allen v. Wright, 468 U.S. 737, 750 (1984); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1990) (describing how standing interfaces with separation of powers and breadth of judicial power).  These values are reflected in the three required elements for constitutional standing:  (1) "an 'injury in fact'–a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not 'conjectural' or 'hypothetical;' " (b) "causation–a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant;"

17

and (3) "redressability–a likelihood that the requested relief will redress the alleged injury." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-04, (1998); see also Vt. Agency of Natural Res. v. United States ex rel Stevens, 529 U.S. 765, 771 (2000); 31 Foster Children v. Bush, 329 F.3d 1255, 1263 (11th Cir. 2003).

"[W]hen a question about standing is raised at the motion to dismiss stage, 'it may be sufficient to provide general factual allegations of injury resulting from the defendant's conduct.' " Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir. 2005) (quoting Fl. Pub. Interest Research Grp. v. EPA, 386 F.3d 1070, 1083 (11th Cir. 2004)) (internal quotations omitted). The Court finds that Plaintiffs have failed to plead any allegations of injury resulting from Defendant's conduct in October 2012. Plaintiffs continued working and continued being paid under the contract for over nine months following their receipt of the October 2012 letters. The contracts were terminated only after Plaintiffs received "contractually proper" notice in June 2013; as such, Plaintiffs have alleged no injury suffered as a result of the October 2012 "ineffective" termination. Accordingly, to the extent that Plaintiffs' claims arise from the letters from Judge Worcester on October 25, 2012 and

18

Commissioner Jones on October 31, 2012, Defendant's Motion to Dismiss is **GRANTED**.

>    2.    *The Termination Notice of June 21, 2013*

Next, the Court turns to the termination notice given to Plaintiffs in June 2013.  Plaintiffs state that Defendant "provided contractually proper notice to Plaintiffs of its intention to terminate the contract" on June 21, 2013.  (Am. Compl., Dkt. [7] ¶ 31.)  Plaintiffs further argue that "[i]t is also plausible that one particular county commissioner had the policy-making authority to make the terminations, or that a majority of the commissioners voted to terminate Plaintiffs' contracts, in reliance on the retaliatory motive of the final policymaker."  (Pls.' Opp'n Br., Dkt. [12] at 23.)  Plaintiffs claim that the "timing of events" surrounding the Plaintiffs' termination and the continued employment of "the only Public Defender who did not speak out in the paper" provide evidence of the County Commission's retaliatory animus.  (Am. Compl., Dkt. [7] ¶¶ 40-44.)   Defendants move to dismiss on grounds that "the governing body of Pickens County had changed between the time of the speech, and the purported 2013 retaliation."  (Def.'s Mot. to Dismiss, Dkt. [9] at 11.)  Defendant argues that a body "that did not even exist" at the time of the speech

19

cannot be held liable for retaliation "some [nine and a half] months after the fact." (Id.)

The Court finds Defendant's argument that the change in county governance from a single County Commissioner to a three-member County Commission forecloses municipal liability unavailing.[2]  However, the Court finds that Plaintiffs have failed to plead a municipal policy or act of a municipal policymaker that would impose liability on Defendant.  As explained above, local governing bodies, such as counties, can be sued under Section 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690.  Plaintiffs do not identify a County policy statement, ordinance, or regulation that violates their constitutional rights. Cf. Cooper v. Dillon, 403 F.3d 1208, 1211 (11th

---

[2] Section 1-11 of the Pickens County Code of Ordinances states that "[t]he board of commissioners shall have the power and authority to fix and establish, by appropriate resolution entered on its minutes, policies, rules, and regulations governing all matters reserved to its exclusive jurisdiction." PICKENS CNTY., GA., CODE OF ORDINANCES § 1-11 (2013).  Further, the County Code provides that the board of commissioners has the power to "exercise all of the power and authority formerly vested by law in the commissioner of Pickens County." (Id.)

20

Cir. 2005) (challenging a Florida statutory provision on First Amendment grounds).   Rather, Plaintiffs argue that the constitutional violation occurred as a result of a decision by County policymakers.   In the Amended Complaint, Plaintiffs allege that "the County provided contractually proper notice to Plaintiffs of its intention to terminate the contract."  (Dkt. [7] ¶ 31.)

But Plaintiffs do not plead sufficient facts surrounding the alleged retaliatory decision.  In particular, Plaintiffs do not specify what entity provided notice to Plaintiffs, or what form that notice took.  (See id.)  Plaintiffs do not allege which, if any, policymakers with final authority with respect to hiring were responsible for terminating them.  Plaintiffs simply assert that "the acts of a majority of its decision-making officials–the members of the County Commission–were motivated by retaliatory animus,"  (id. at ¶ 44), and that it is "plausible that one particular county commissioner had the policy-making authority to make the terminations, or that a majority of the commissioners voted to terminate Plaintiffs' contracts, in reliance on the retaliatory motive of the final policy-maker."  (Pls.' Opp'n Br., Dkt. [12] at 23.)   Factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (internal citation omitted). "The pleading

21

must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." Id. (internal citation and modifications omitted). Here, the Court finds that Plaintiffs' allegations relating to County liability do not contain sufficient facts to rise above a speculative level.

Accordingly, because Plaintiffs have failed to provide sufficient factual allegations to satisfy the pleading standards articulated in Twombly and Iqbal, to the extent that Plaintiffs' claims arise from the June 21, 2013 notice of termination of the contracts, Defendant's Motion to Dismiss is **GRANTED**.

> 3.    *Failure to Consider Johnson for the Public Defender Position*

Finally, the Court turns to Plaintiff Johnson's individual allegation. Plaintiffs identify Defendant's failure to consider or interview Plaintiff Johnson for the "newly-created Juvenile Court public defender position for Pickens County" as a third retaliatory act. (Am. Compl., Dkt. [7] ¶ 42.)  Plaintiffs claim that the "startling disparity in qualifications" between Plaintiff Johnson and the attorney hired for the public defender position provides evidence of the County's retaliatory animus. (Id.)  Defendant moves to dismiss on grounds that

22

"Plaintiff [Johnson] does not allege who it is that was responsible for hiring, or whether that person had final policymaking authority so as to make the County ultimately responsible for anything infirm in the hiring process."  (Def.'s Mot. to Dismiss, Dkt. [9] at 12.)   The Court agrees with Defendant that Plaintiffs have failed to plead sufficient factual content for the Court to draw a reasonable inference that the County is liable for the retaliatory conduct alleged.  While Plaintiffs offer the timing of events, the perceived disparity in Johnson's and the hired lawyer's qualifications, and the continued employment of Ms. Galligan as evidence of retaliatory motive (id. at ¶¶ 40-44), Plaintiffs fail to identify *whose* retaliatory motive that evidences, or how that motive should be imputed to the County.  Nor do Plaintiffs identify when Plaintiff Johnson applied for the position, or when he received notice that he would not be considered. Accordingly, to the extent that Plaintiffs' claims arise from the failure to consider or interview Plaintiff Johnson for the public defender position, Defendant's Motion to Dismiss is **GRANTED**.

    In accordance with the foregoing, Defendant's Motion to Dismiss is **GRANTED** with respect to Plaintiffs' First Amendment claims brought

23

pursuant to 42 U.S.C. § 1983 (Count I).  The Court now considers Plaintiffs'

breach of contract claims.

> B.    State Law Breach of Contract Claims (Count II)

Having dismissed Plaintiffs' sole federal claim, and because Plaintiffs do

not allege diversity jurisdiction, the Court no longer has original jurisdiction

over this action.  Under 28 U.S.C. § 1367, a district court may exercise

supplemental jurisdiction over state-law claims related to any claims over which

the court has original jurisdiction.  But § 1367 is clear in providing that the

district court may decline supplemental jurisdiction if "the district court has

dismissed all claims over which it has original jurisdiction."  28 U.S.C. §

1367(c)(3).  Indeed, the United States Supreme Court has held that "when the

federal-law claims have dropped out of the lawsuit in its early stages and only

state-law claims remain, the federal court should decline the exercise of

jurisdiction."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).  And

the Eleventh Circuit has held that federal courts are "strongly encourage[d] or

even require[d]" to dismiss state-law claims "if the federal claims are dismissed

prior to trial."  Ingram v. Sch. Bd. Of Miami-Dade Cnty., 167 F. App'x 107,

24

108-09 (11th Cir. 2006) (quoting <u>Mergens v. Dreyfoos</u>, 166 F.3d 1114, 1119 (11th Cir. 1999)).

This case is still in its early stages.  Indeed, no discovery has yet taken place.  Therefore, the Court declines supplemental jurisdiction over the remaining state-law claims in this case.  As such, Plaintiffs' state-law claims are **DISMISSED** for lack of subject-matter jurisdiction.

### Conclusion

For the foregoing reasons, Defendant Pickens County Georgia's Second 12(b)(6) Motion to Dismiss [9] is **GRANTED**.  Plaintiffs' state-law claims are **DISMISSED** for lack of subject-matter jurisdiction.

**SO ORDERED**, this   12th   day of September, 2014.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

25